```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re: BEST PAYPHONES, INC.,                :
                                            :        Case No. 01-B-15472 (SMB)
                        Debtor.             :
------------------------------------------------------------x
BEST PAYPHONES, INC.,                       :
                                            :
                        Appellant,          :
                                            :        05 Civ. 6531 (GEL)
                                            :        05 Civ. 10793 (GEL)
        -v-                                 :
                                            :        OPINION AND ORDER
VERIZON NEW YORK, INC.,                     :
                                            :
                        Appellee.           :
------------------------------------------------------------x
```

Mayne Miller, New York, NY, for appellant.

Darryl S. Laddin, Arnall Golden Gregory LLP,
Atlanta, GA, for appellee.

GERARD E. LYNCH, District Judge:

Best Payphones, Inc. ("Best"), the debtor in the underlying bankruptcy proceedings, appeals from two orders entered by the Bankruptcy Court (Stuart M. Bernstein, Ch. B.J.) that allowed a claim filed by appellee Verizon New York, Inc. ("Verizon"), granted Best setoffs against Verizon's claim in the same amount, and terminated proceedings on Best's objection to the claim. (R. 758-59, 870-71.) The orders will be affirmed in part and reversed in part, and the consolidated cases will be remanded for further proceedings consistent with this Opinion and Order.

## BACKGROUND

Because Best's briefing presents a swirl of facts and legal argument that is difficult to penetrate, it is helpful to begin with the relevant procedural background of these appeals. Most

of the history of the case is summarized clearly in Judge Bernstein's written opinion of November 4, 2005. (R. 864-69.) Best, which operated pay telephones in New York City, filed for Chapter 11 bankruptcy protection in October 2001; its reorganization plan, which provided for the full payment of all allowed claims, was confirmed by the Bankruptcy Court in December 2002. (R. 864-65; Appellant's Br. at 1-3.)

In February 2002, Verizon filed a proof of claim against Best for $75,962.14 in charges for phone services provided by Verizon. (R. 865; Appellee's Br. at 1-2.) Subsequently, Verizon withdrew all but $35,307.76 of the claim, acknowledging that its initial calculations had been in error. (Appellee's Br. at 2 & n.3.) Best filed an objection to the claim, arguing that Verizon had injured it in various ways and that as a consequence Verizon owed it more than it owed Verizon. (R. 865.) However, Best did not seek any affirmative relief against Verizon; it simply asserted its alleged setoffs as a defense to Verizon's claim. (R. 865; Appellant's Br. at 18.) Thus, if Best succeeded in establishing setoffs exceeding Verizon's claims, all that would occur is that Verizon would receive no distribution under the confirmed plan; Best would receive no affirmative relief from Verizon.

However, the Bankruptcy Court was not the only forum in which Best and Verizon were contending. In proceedings before the New York State Public Service Commission ("PSC"), Best sought a refund of certain municipal surcharge payments it claimed Verizon had incorrectly billed. (R. 865-66.) Ultimately, the parties settled the PSC dispute, in a stipulation that provided that Best was entitled to be paid $25,285.08. The stipulation made clear that this entitlement was separate from the matters under litigation before the Bankruptcy Court, and provided in relevant part that:

> 1. Verizon will pay to Best . . . a total of $25,285.08 in the manner described in paragraph two below, which constitutes a compromise amount reflecting Verizon's and Best['s] calculations of principal and interest Verizon owes to Best . . . for municipal surcharge overcharges billed in October, November and December, 1992 until September, 2003 only;
>
> 2. By this stipulation, Verizon agrees that Best['s] escrow agent in its bankruptcy case . . . may release to Best . . . $25,285.08 from amounts being held in escrow on Verizon's behalf. If it is determined at some later date by the Bankruptcy Court that the total amount of Verizon's prepetition charges owed by Best . . . to Verizon for any period prior to October 23, 2001 (the "Verizon Prepetition Charges") is less than $25,285.08, Verizon will pay directly to Best . . . the difference between (x) $25, 285.08, less (y) the total amount of the Verizon Prepetition Charges, plus 4% interest per annum accruing from the date that is 10 days from the date of this Stipulation, within 10 days of entry of a final, non-appealable Order determining the amount of the Verizon Prepetition Charges.

(R. 792-93.)

On April 20, 2005, the Bankruptcy Court held a trial on Verizon's claim. At the conclusion of the trial, the court upheld the claim and determined that Verizon was due $35,307.76. (R. 325-29.) There was some discussion at the end of the proceeding as to the consequences of these rulings. Best contended that even if Verizon's claim was fully allowed, Verizon still owed it money for other reasons, including overcharges relating to "dial around compensation." (R. 330.) Verizon contended that these matters were all "pending in other jurisdictions" (R. 331), but Judge Bernstein questioned whether some or all of the setoffs had not been asserted in Best's objection to Verizon's claim and were therefore before him (id.). Verizon did, however, concede that the PSC settlement should be set off against Verizon's claim, leaving Best owing approximately $10,000. Ultimately, the Court asked the parties to brief by letter their respective positions on what if anything remained pending before the Court. (R. 332-

3

33.)

In the meantime, however, the Court entered an order finalizing its decision on the issues addressed in the trial of April 20, 2005. In that order, issued on May 4, 2005, the Court held that (1) Verizon's claim was allowed in the full amount of $35,307.76; (2) the PSC settlement should be set off against that amount, leaving $10,022.68 owing to Verizon; and (3) the remaining claim amount may be subject to further setoffs, to be determined in further proceedings before the Bankruptcy Court. (R. 758-59.) Best filed a notice of appeal from that ruling. (R. 760-61.) That appeal is pending here under Docket Number 05 Civ. 6531.

The parties continued to contest whether Best had additional claims that could be set off against the $10,022.68 that remained due to Verizon under the May 4 Order. As Judge Bernstein summarized it, Best identified two matters still at issue: one relating to "dial around compensation" and one relating to the handling of "migration" orders issued when Best changed local telephone service carriers. (R. 867.) Verizon first argued that these matters should be litigated in other forums, but ultimately contended that the entire matter was moot because Verizon was willing to abandon its remaining $10,022 claim – since Best had not sought affirmative relief in its objection, the most favorable outcome it was entitled to receive in the Bankruptcy Court was a determination that Verizon would not receive a distribution under the Reorganization Plan, an outcome to which Verizon now consented. (R. 867-69.)

Judge Bernstein adopted Verizon's approach to resolving the case, over the objection of Best. First, he noted that to the extent Best were to prevail on its original appeal of his resolution of the issues contested at the April 2005 trial, such that the total value of Verizon's claim would be reduced below $25,285.08, under the terms of the PSC stipulation Verizon would have to pay

4

Best the difference between whatever amount (if any) of its claim was affirmed on appeal and the $25,285.08 settlement amount. Thus, the pendency of the first Best appeal was no reason not to terminate the litigation in the Bankruptcy Court. (R. 868.)

Second, Judge Bernstein adopted Verizon's view on Best's setoff claims. Judge Bernstein noted that Best "never sought affirmative relief from Verizon in [the Bankruptcy] Court, either through its objection or by way of a separate adversary proceeding." (R. 868-69.) It had merely proposed setoffs negating any recovery by Verizon. Accordingly, no matter how many meritorious claims Best may have had against Verizon, and whatever their value, Best could not obtain any relief in the Bankruptcy Court other than the defeat of Verizon's claim. Once Verizon was willing to withdraw the remainder of its claim, the availability of any setoffs became a moot point, since Best would have already received all the relief it had sought from the Bankruptcy Court – a zero recovery by Verizon. Since the deadline for seeking any affirmative recovery had long since passed, Best had received all the relief it could receive in those proceedings. (R. 869.) Accordingly, on November 4, 2005, Judge Bernstein signed a final order terminating all proceedings on Verizon's claim and Best's objection, but noted that if this Court on appeal should reject the Bankruptcy Court's findings in such a way as to reduce Verizon's claim below $25,285.08, Best would be entitled to payment under the terms of the PSC stipulation. Best appealed from the November 4 Order as well. (R. 870-71.) That second appeal is pending here under Docket Number 05 Civ. 10793.

This Court consolidated Best's appeals from the Bankruptcy Court's May 4, 2005, and November 4, 2005, Orders. The appeals have now been fully briefed, and are before the Court for decision.

5

**DISCUSSION**

Best raises a host of issues in objecting to the Bankruptcy Court's May 4 and November 4 Orders. These issues will be addressed in turn.

I. Burden of Proof

Best first argues that the Bankruptcy Court misapplied the applicable burden of proof at the April 20, 2005, trial on Verizon's affirmative claim. (Appellant's Br. at 5-7.) Although acknowledging that a proper proof of claim constitutes prima facie evidence of the validity and amount of a claim under 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3001(f), Best notes that Verizon filed a proof of claim for $75,000, but then withdrew portions of the claim and sought only $35,307.76 at trial. Best contends that Verizon lost the benefit of the Rule 3001(f) presumption by failing to file an amended proof of claim.

This argument is frivolous. First, Best does not dispute that Verizon's claim was properly filed and contained appropriate supporting detail for the amount actually claimed at trial. Best cites no authority for the proposition that a properly filed proof of claim loses its force if the claimant withdraws some portion of the claim, and there is no logical reason why it should do so.

Second, it is clearly established law that the Rule 3001(f) presumption governs only the burden of production, and that the ultimate burden of proving the claim by a preponderance of the evidence remains with the claimant.[1]  4 Collier on Bankruptcy ¶ 502.02[3][f], at 502-18 to 502-19 (15th ed. 2005); accord, e.g., Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell),

---

[1] Unless, of course, the claimant would not have the burden of proof on such a claim asserted outside of bankruptcy.

223 F.3d 1035, 1039 (9th Cir. 2000). Judge Bernstein accurately stated this rule at the outset of the April 20, 2005, trial (R. 137). To the extent that Best now argues that it should not have been required to proceed first at the trial – a meritless position given the import of the Rule 3001(f) presumption – it expressly waived that argument below. Best's trial counsel explicitly stated that there was no dispute as to Judge Bernstein's statement that "[a] properly executed proof of claim is prima facie evidence of the amount of the debt and then it's up to the debtor to come forward with evidence to rebut that . . . presumption." (Id.)

Finally, and most importantly, at the end of the trial Judge Bernstein made explicit findings of fact based on what he regarded as the "credible evidence." (R. 327-29.) Nowhere in Judge Bernstein's findings is there any indication that his decision was based on an improper assignment of the burden of proof on Verizon's claim to Best, that is, a finding that the evidence was in equipoise and Best failed to carry a putative burden of proof. Rather, the Judge expressly determined that the evidence supported Verizon's position. In the end, Best's argument reduces to an attack on the Bankruptcy Court's findings of fact. But such findings "shall not be set aside unless clearly erroneous," Fed. R. Bankr. P. 8013, and there is no basis for concluding that the Bankruptcy Court clearly erred in its factual findings.

## II. Contract Interpretation

Best next argues that the Bankruptcy Court erroneously interpreted the governing contract between Best and Verizon. (Appellant's Br. 8-9.) To the extent that Best presents this as a "question of law," its argument is self-defeating. Best itself concedes that the contract is "confusing and ambiguous," a characterization that extends to the very provision of the contract that Best claims Judge Bernstein misinterpreted. (Id.) "Where, as here, the meaning of a

7

particular contractual provision is ambiguous and the intent of the parties cannot be determined from the contractual language itself, the ambiguity presents a question of fact to be determined by the [factfinder.]" Hoyt v. Andreucci, 433 F.3d 320, 331 (2d Cir. 2006); Postlewaite v. McGraw-Hill, Inc., 411 F.3d 63, 67 (2d Cir. 2005) (noting that where "the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry, a question of fact is presented").

In any event, Best's argument, which concerns paragraph 9(c) of the contract, fails.[2] Verizon's claim arose from certain discounts that Best received but that Verizon claimed Best was not entitled to because it "failed to use the minimum required volume of Verizon's telecommunications services during the one-year period at issue, which ended in 1999." (Appellee's Br. at 3.) Because Best's usage fell short of expectations, paragraph 5 of the contract "provided for Verizon to perform a reconciliation or 'true-up' of [Best's] actual usage, and then to be able to recoup certain of the unearned discounts that it had previously extended to [Best] in anticipation of a higher level of usage that never materialized." (Id.) On appeal, Best contends that while paragraph 5 of the contract permitted Verizon to do a true-up, Verizon miscalculated the amount of Best's usage. Because Best migrated its payphone lines to another service provider during the year in question, which it contends constituted a "mid-year termination" under the contract, paragraph 9(c) provided that an "annualized" as opposed to actual usage figure should have been used by Verizon in performing the true-up. (R. 363-64.) Best contends that the annualized figure – the amount of Verizon's services that Best would have

---

[2] While Best discusses other contractual provisions in its briefs, the only coherent argument that (1) the Court can discern from Best's muddled briefing and (2) is relevant to the propriety of Judge Bernstein's ultimate findings of fact, concerns paragraph 9(c).

8

used if it continued using Verizon's services for the remainder of the year, assuming that usage continued at the same rate as for the year to date – would have exceeded the minimum required usage figure. (Appellant's Br. at 8.)

Verizon's sole response to this argument is that paragraph 9(c) concerns termination charges, which are not at issue in this case, and that it thus has nothing to do with the true-up provisions of paragraph 5. (Appellee's Br. at 8-9.) However, that is not clear from the text of paragraph 9(c), which (if Best terminated the contract when it claims it did) provides that:

> No termination charge shall apply . . . ; however, a comparison of annualized usage charges versus [the minimum required usage figure] will be calculated if the termination is effective in the middle of [a given year.] If appropriate, the discount level will be adjusted to reflect actual usage charges.

(R. 364.) While the first quoted clause deals with termination charges, the second deals with adjustment of the customer's discount level and the method for comparing the customer's usage and the minimum required usage figure to determine the correct discount level – exactly what the true-up provisions of paragraph 5 are all about.

Thus, assuming that Best's contention that its migration constituted a mid-year termination is correct, it was arguably entitled to a true-up calculation based on annualized rather than actual charges for the year in question. Judge Bernstein did not address this particular argument in the course of holding on an unrelated point, during the April 20, 2005, trial, that paragraph 9 was irrelevant to the case because it concerned only termination charges, which Verizon was "not seeking." (R. 323.) However, that oversight is unsurprising; aside from floating the "annualization" argument at a pre-trial conference occurring ten months before trial (R. 109-18), Best failed to raise it in the Bankruptcy Court. It is not presented in Best's

9

objection to Verizon's claim (R. 39-46), in the versions of the parties' pre-trial order included in the Record on Appeal (R. 615-29, 635-64), or in any letter or other submission to the Bankruptcy Court made by Best (R. 756-57, 780-82, 789-90, 805-12, 816-18, 824-29, 832-34, 857-61). It was not raised when paragraph 9(c) was specifically discussed by the court and parties during the April 20, 2005, trial (in fact, Best actually objected to the applicability of the clause containing the "annualization" language) (R. 164-84, 319-25), or in any subsequent proceeding before the Bankruptcy Court (see, e.g., R. 835-56 ("October 6, 2005, Hearing")). For these reasons, regardless of its merit, Best's argument is deemed waived for failure to adequately present it to the Bankruptcy Court in the first instance. See, e.g., Vesta Fire Ins. Corp. v. New Cap Reins. Corp. (In re McKenna), 238 F.3d 186, 187 (2d Cir. 2001) (per curiam); Siewert v. Christy (In re Finely, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey), 194 B.R. 728, 733-34 (S.D.N.Y. 1995).

III. Judicial Notice

Best next contends that the Bankruptcy Court "failed to take proper judicial notice of federal and state statutes and regulations, as well as [of] the state of the [telecommunications] industry when the . . . contract was signed." (Appellant's Br. 9.) To the extent that Best argues that Judge Bernstein should have taken judicial notice, at a trial in 2005, of the "state of the [telecommunications] industry" in 1996, the argument is frivolous. A court may take judicial notice of a fact that is "not subject to reasonable dispute" because it is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Best does not clearly advise this Court of what "facts" about the "state of the

10

industry" it claims are matters of common knowledge, nor does it point to any place in the record where it asked Judge Bernstein to take judicial notice of any fact about the industry or provided him with materials that would permit him to do so. See Fed. R. Evid. 201(d) ("A court shall take judicial notice if *requested by a party and supplied with the necessary information*." (emphasis added)). Moreover, far from being undisputed, the only "fact" about the industry that Best appears to have asserted below, the absence of competition in the industry when the contract was signed, was found by the Bankruptcy Court to be contrary to testimony in the record (R. 325), and thus was plainly not suitable for judicial notice.[3]

To the extent that Best argues that the court below failed to take notice of certain statutes, regulations, or other official materials, Best once again fails to indicate in its briefing any occasion on which it requested the Bankruptcy Court to take notice of such materials and provided those materials to the court. See Fed. R. Evid. 201(d). More importantly, Best's confusing argument appears to amount to a contention not that these sources of law actually govern the parties' dispute, which is in essence a simple contract-interpretation matter, but rather

---

[3] On this score, Best makes an additional factual argument, contending that Judge Bernstein misinterpreted the record testimony in finding that competition in the industry existed when the parties entered into the contract, pointing to a highly-ambiguous snippet of testimony from the April 20 trial. (Appellant's Br. at 11; Reply at 11.) First, the ambiguous testimony relied on by Best could easily be interpreted in a manner consistent with Judge Bernstein's finding, and there is therefore no basis for holding that the finding was clearly erroneous. More importantly, while Best claims that Judge Bernstein's statement regarding the existence of competition at the time the parties entered into the contract was integral to his ultimate finding that a July as opposed to May start date for the contract should be applied, that is not so. While Judge Bernstein discussed the competition point in rendering his decision (R. 326-27), his very next words were: "*In any event*, [Best] signed an agreement that had a July 1st date and there is no basis as a contract matter to modify that date. There's no allegation that there was fraud, there's no allegation of mistake. They signed the agreement. They agreed to the July 1st date." (R. 328 (emphasis added).)

11

that the existence of these authorities somehow sheds light on factual questions relevant to whether the contract became effective as of May or July 1995, which in turn determines the amount owed by Best on Verizon's affirmative claim. (Appellant's Br. 10-11.) But as Judge Bernstein aptly noted when Best raised a state regulation apparently relating to the question whether Best was unlawfully discriminated against by Verizon, the question before the court really involved a "fact specific determination." (R. 324.) And as noted above, the Bankruptcy Court's factual conclusions as to the start date offered to Best, as well as to the absence of discrimination against Best (R. 326-28), are not clearly erroneous, and Best does not seriously contend that they are.

IV. <u>Evidentiary Ruling</u>

Without citation of authority, and with barely a coherent account of what actually occurred at trial, Best argues that the Bankruptcy Court erred in some way regarding the admission or analysis of certain transcripts of prior statements made by a Verizon witness, Linda Klein. The clearest statement of Best's puzzling claim is in the caption to the argument in Best's opening brief, which states that the Bankruptcy Court erred because it "neither considered [the transcripts] in making its decision nor allowed [Best] to argue their effect." (Appellant's Br. 11.)

The sole basis for Best's contention that Judge Bernstein failed to consider the transcripts is the claim that, as to one such transcript, there could not have been enough time for Judge Bernstein to have adequately considered it before rendering his decision at the end of trial (Reply at 11); this allegation, of course, is plainly insufficient to substantiate that Judge Bernstein failed or refused to consider any of the record evidence. Further, Best points to no place in the record where the Bankruptcy Court limited Best's ability to make any argument it saw fit regarding the

12

relevance of any evidence. To the extent Best argues that the Bankruptcy Court erred in failing to give the alleged prior statements the weight Best would have liked in determining the credibility of the evidence before it, such matters are for the factfinder and not for an appellate court.

V. Findings of Fact

Finally, Best makes several arguments that, whether acknowledged by Best or not, are in essence objections to the Bankruptcy Court's findings of fact. (Appellant's Br. at 12-19; Reply at 11-17.) All of these arguments expressly or implicitly ask this Court to reassess the credibility of the witnesses or the weight to be given to different pieces of evidence. It suffices to say that the Court has reviewed these arguments and that the findings of fact to which Best objects are not clearly erroneous.

VI. PSC Settlement

Best also challenges the Bankruptcy Court's ultimate determination that this dispute was rendered moot when Verizon abandoned what remained of its claim after the PSC settlement was offset against it. (Appellant's Br. at 19-20; Reply at 17-18.) As previously discussed, the Bankruptcy Court held, over Best's objection, that once the PSC settlement was applied to Verizon's claim and Verizon abandoned the remaining $10,000 and change owing to it, there was no point in considering Best's setoffs because Best did not assert them as claims for affirmative relief, and thus it could obtain no relief on them other than the defeat of Verizon's claim, which it had already obtained. (R. 760-61, 867-69.)

While presented in a convoluted and roundabout fashion, Best's argument is that the PSC settlement should have been applied to the *net* amount owing by Best to Verizon, after the setoffs

13

were applied, and not directly to the full allowed amount of Verizon's claim. (Appellant's Br. at 20; Reply at 18.)[4] Put another way, Best argues that the Bankruptcy Court considered the PSC settlement and setoffs in the wrong order, which is important because the settlement, unlike the setoffs, authorizes affirmative relief by Best against Verizon. (R. 793-94.)

The point can be clarified by a concrete example. Assume that the value of Best's unadjudicated setoff claims is, in reality, $40,000. If the PSC settlement is applied to Verizon's claim before the setoffs, then as the Bankruptcy Court concluded, neither party is owed anything. Since the unadjudicated setoffs can provide no affirmative relief against Verizon, there is no need to consider them after the net amount of Verizon's claim falls to zero.

$35,307.76 (Verizon claim) - $25,285.08 (PSC settlement) = $10,022.68 (Remaining Verizon claim).

$10,022.68 (Remaining Verizon claim) - $40,000 (Setoffs) = **$0 (Owed to either party).**

Thus, when the PSC settlement is deducted first, the exact amount of the unadjudicated setoffs makes no difference, so long as it is at least $10,022.68 (as Verizon is prepared to stipulate that it is), for even if the setoffs exceed that sum, the most that Best can accomplish is to completely eliminate Verizon's claim.

However, because the PSC stipulation *does* authorize affirmative relief against Verizon, a different result obtains if the unadjudicated setoffs are applied first. Once again assuming that Best's setoffs are worth $40,000, that amount completely offsets the amount owing to Verizon on its affirmative claim. Best, not having sought any affirmative relief from Verizon, is still not

---

[4] This argument was made more clearly in the Bankruptcy Court (R. 781-82, 812, 857-58, 860-61), but was not directly addressed by Judge Bernstein. On appeal, Verizon essentially ignores the argument. (Appellee's Br. at 15.)

entitled to receive anything from the Bankruptcy Court. However, Best is entitled to receive, under the terms of the PSC stipulation, the difference between "x," the $25,285.08 settlement amount and "y," which in this case is the net amount due to Verizon. (R. 793.) Because that amount is zero, Best is entitled to the full settlement payment:

> $35,307.76 (Verizon claim) - $40,000 (Setoffs) = $0 (Remaining Verizon claim; "y" in PSC stipulation).
>
> $25,285.08 (PSC settlement; "x" in PSC stipulation) - $0 (y) = **$25,285.08 (Owed to Best)**.

Therefore, if the PSC settlement was intended to be applied to net amount owing by Best, and not simply the amount of Verizon's full allowed claim (before application of any setoffs), the Bankruptcy Court erred, and a remand for consideration of the unadjudicated setoffs and recalculation of the net amount of Verizon's claim is necessary.

The PSC stipulation states that "Verizon will pay to Best . . . a total of $25,285.08" and that "Verizon agrees that Best['s] escrow agent in its bankruptcy case . . . may release to Best . . . $25,285.08 from amounts being held in escrow on Verizon's behalf." (R. 792-93.) The stipulation also provides for the settlement amount to be offset against amounts determined by the Bankruptcy Court to be owed by Best to Verizon:

> If it is determined at some later date by the Bankruptcy Court that the total amount of Verizon's prepetition charges owed by Best . . . to Verizon for any period to October 23, 2001 (the "Verizon Prepetition Charges") is less than $25,285.08, Verizon will pay directly to Best . . . the difference between (x) $25, 285.08, less (y) the total amount of the Verizon Prepetition Charges, plus 4% interest per annum accruing from the date that is 10 days from the date of this Stipulation, within 10 days of entry of a final, non-appealable Order determining the amount of the Verizon Prepetition Charges.

(R. 793.)

15

One reading of this language is that the PSC settlement amount is to be offset against whatever money (if any) the Bankruptcy Court ultimately finds is "owed by Best . . . to Verizon," not merely the amount of Verizon's claim prior to the application of Best's setoffs. And indeed, the opposite interpretation leaves the door open to the seemingly unfair result that Best might be unable to collect on the settlement – a fixed sum of money already owing by Verizon to Best – even through the amount Best otherwise owes to Verizon is *less* than the settlement amount (which Best contends is the case here). On this view, the PSC stipulation was intended by the parties to result in a payment to Best if the net amount due to Verizon upon calculation by the Bankruptcy Court of Verizon's claim minus all setoffs is less than $25,285.08, and Verizon cannot escape its bargain by urging the Bankruptcy Court to apply the settlement amount against its affirmative claim first, and then agreeing to "concede" that the setoffs would equal the remaining amount of its claim, $10,022.68.

However, this interpretation of the PSC stipulation is not inevitable. Verizon could argue that "prepetition charges owed by Best" simply refers to the gross amount of charges Best owed to Verizon, and not to the net amount (if any) owed to Verizon after the application of extraneous setoffs.[5] This interpretation could be supported by Best's own objection to Verizon's claim, which asserts the municipal surcharge claim ultimately settled by the PSC stipulation simply as one of a number of equivalent setoffs to be applied in an effort to reduce the Verizon claim to zero and avoid payment. (R. 40-41.) On this view, having submitted the municipal

---

[5] On the other hand, all but two of the setoff claims asserted in Best's objection concern overbilling (R. 40-46), and thus directly relate to the gross amount of charges Best owed to Verizon. This lends further support to the view that the PSC settlement was to be applied to the net amount owing by Best to Verizon in the Bankruptcy Court, and not simply the amount of Verizon's affirmative claim.

16

surcharge amount to the Bankruptcy Court as a potential setoff, and having negotiated a settlement that entitled it to no more than $25,285.08, which could be wiped out by (that is, set off against) Verizon's affirmative claim based on that claim's alleged value, Best has obtained the full value of its settlement by having it offset directly against Verizon's affirmative claim, and is entitled to affirmative payment from Verizon only if it succeeds in establishing its setoffs in some other forum that, unlike the Bankruptcy Court, may award affirmative relief on them.

The PSC stipulation appears susceptible to either interpretation; however, the Bankruptcy Court did not discuss the ambiguity or develop a record beyond the text of the stipulation. For this reason, while the Court acknowledges the "long and litigious history surrounding the objection to the claim filed by Verizon" (R. 867), a remand for further proceedings is unfortunately necessary. See, e.g., Hoyt, 433 F.3d at 331 (holding contractual ambiguity presents factual question to be resolved in first instance by factfinder). On remand, the Bankruptcy Court is free to consider legal or factual submissions from the parties regarding the meaning of the PSC stipulation, as well as any other procedural or substantive arguments for or against application of the settlement amount prior to resolution of Best's setoff claims.

## CONCLUSION

For the foregoing reasons, the May 4, 2005, and November 4, 2005, Orders of the Bankruptcy Court are AFFIRMED in part and REVERSED in part. The matter is REMANDED for further proceedings consistent with this Opinion and Order. The Clerk of Court is respectfully directed to close out the cases docketed at Nos. 05 Civ. 6531 and 05 Civ. 10793.

SO ORDERED.

Dated: New York, New York
       March 14, 2006

                                          _____
                                          GERARD E. LYNCH
                                          United States District Judge